PRIVATE PROCESS

Case Number: 2020-CI-20625

||| ||| [barcode] ||| |||
2020CI20625  S00001

**DISABILITY RIGHTS TEXAS**

**VS.**

**KIRBY POLICE DEPARTMENT**

(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
225th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To:   KEVIN BOIS



*Dennis M Cromwell PSG383*
DELIVERED BY
DATE 11-3-2020

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk  who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were  served this CITATION and ORIGINAL PETITION  , a default judgment may be taken against you." Said ORIGINAL PETITION   was filed on the 22nd day of October, 2020.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  2ND DAY OF NOVEMBER A.D., 2020.

COTY MEIBEYER
ATTORNEY FOR PLAINTIFF
1500 MCGOWEN ST 100
HOUSTON, TX 77004-1153

[seal: DISTRICT COURT OF BEXAR COUNTY TEXAS]

Mary Angie Garcia
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas  78205

By: *Laura Castillo*, Deputy

---

DISABILITY RIGHTS TEXAS
VS
KIRBY POLICE DEPARTMENT

**Officer's Return**

Case Number: 2020-CI-20625
Court: 225th Judicial District Court

I received this CITATION on _____ at _____ o'clock ___M. and:(  ) executed it by delivering a copy of the CITATION with attached ORIGINAL PETITION   the date of delivery endorsed on it to the defendant, _____, in person on the _____ at _____ o'clock ___M. at:_____ or (  ) not executed because _____.

Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____County, Texas

By: _____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS  _____

_____
NOTARY PUBLIC, STATE OF TEXAS

OR: My name is _____, my date of birth is _____, and my address is _____, _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

ORIGINAL (DK002)

FILED
10/12/2020 4:21 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Annabelle Kung

**2020CI20625**

*cony*
*10/28*

CAUSE NO. _____

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| KEVIN BOIS, IN HIS OFFICIAL | § | |
| CAPACITY AS THE POLICE CHIEF OF | § | |
| THE KIRBY POLICE DEPARTMENT, | § | **225TH** |
| | § | |
| Defendant. | § | _____ JUDICIAL COURT |

## ORIGINAL PETITION

Plaintiff, Disability Rights Texas ("DRTx"), files this petition for writ of mandamus pursuant to TEXAS GOV'T CODE § 552.321(a) challenging the refusal of the Kirby Police Department ("Kirby PD") to allow Plaintiff access to documents of the arrest, detention, and death by suicide of an individual, A.W., in Kirby PD custody. In support, DRTx shows the Court the following:

### I.  DISCOVERY PLAN

Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.  PARTIES

1.     DRTx is the requestor of the public information at issue in this suit from the Kirby Police Department.

2.     DRTx is a nonprofit Texas corporation which has been designated as the Protection and Advocacy ("P&A") system for persons with disabilities in the State of Texas. As the P&A system, DRTx is authorized to protect and advocate for the rights of persons with disabilities under the Developmental Disabilities Assistance and Bill of Rights ("PADD") Act, 42 U.S.C. §§ 15041-15043; the Protection and Advocacy for Persons with Mental Illness Act ("PAIMI") Act, 42 U.S.C.

§§ 10801-10851; and the Protection and Advocacy of Individual Rights Program ("PAIR") of the Rehabilitation Act of 1973, 29 U.S.C. § 794e (hereinafter collectively referred to as the "P&A Acts"). Under its federal mandates, DRTx has, *inter alia,* the authority to investigate incidents of abuse and neglect of individuals with disabilities. 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B) and 29 U.S.C. § 794e(f). DRTx is located at 2222 West Braker Lane, Austin, Travis County, Texas 78758.

3.      Defendant Kevin Bois is the duly-elected Police Chief for Kirby PD and chief administrator of the Kirby PD, which operates the Kirby Police Jail. Defendant Kevin Bois is sued in his official capacity. Defendant Kevin Bois may be served individually and in his official capacity at the Kirby Police Department, 4130 Ackerman Road, San Antonio, Bexar County, Texas 78219.

4.      Whenever Plaintiff uses the word "Defendant" in this petition, it means Defendant, his agents, employees, successors and all persons acting in concert with him at his direction.

### III.   VENUE AND JURISDICTION

5.      The Court has venue and jurisdiction of this suit under TEXAS GOV'T CODE §552.321.

### IV.   FACTUAL BACKGROUND

6.      Congress enacted the P&A Acts after extensive congressional investigations found that existing state systems for monitoring compliance with respect to the abuse and neglect of persons with disabilities residing in institutions vary widely and are frequently inadequate to protect these individuals. In order to ensure that the fox was no longer guarding the hen house, Congress mandated that each state have a "protection and advocacy system" designed to have independent access to institutions and records in order to detect and prevent abuse and neglect. Because the State of Texas receives federal funds under the P&A Acts, it is required to designate

a system that is designed to protect and advocate the rights of individuals with disabilities, and to investigate incidents of abuse and neglect of individuals with disabilities. *See, e.g.*, 42 U.S.C. § 10801, *et seq.*; 42 U.S.C. § 15001, *et seq.* DRTx has been designated by the State of Texas to be that system.

7.     In order to effectuate these provisions, these federal statutes and their implementing regulations provide P&As with two very expansive and mandated tools—access to locations in which people with disabilities are found and access to records and information.

8.     The access to records and information sections of the P&A Acts provide DRTx with the express authority to access "all" records of an individual with a disability including those necessary and relevant to conducting a full investigation of abuse, neglect, injury, or death of a person with a disability. 42 U.S.C. § 10805(a)(4); *see also* 42 U.S.C. § 15043(a)(2)(I)(J) and 29 U.S.C. § 794e(f)(2).[1]  The statutes go on to state that a record means a "*report* prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility..."  42 U.S.C. § 10806(b)(3)(A)(emphasis added); *see also* 42 U.S.C. § 15043(c)(1).

9.     After A.W., an adult without a guardian, committed suicide in the Kirby County Jail.  Pursuant to its Congressional mandate to investigate incidents of abuse or neglect, DRTx requested A.W.'s entire jail record, including all grievances and investigations, any and all video footage of her in the holding cell and during booking; the entire jail medical record; and physical death reports and certifications.

---

[1] Also see PAIMI regulations, 42 C.F.R. § 51.2, which define "full investigation" to mean "access to facilities, clients and records authorized under this part that is necessary for a P&A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place." The PADD regulations, 45 C.F.R. § 1326.19, contain a similar definition.

10.     On May 11, 2020, DRTx received a copy of the Defendant's request and supporting brief for an opinion from the Office of the Texas Attorney General. Defendant sought to withhold *most of the documents* requested by DRTx based on state law exceptions set forth in Texas Government Code § 552.101 (confidential information exception) and Texas Government Code § 552.108(a)(1) (criminal law detection, investigation, or prosecution exception). More specifically, Defendant indicated it sought to withhold from disclosure "the case notes, the Voluntary Statements, the other documents, and the recordings requested." In fact, the only document the Defendant was willing to release was a portion of the incident report "that specifically includes a detailed description of the incident."

11.     Subsequently, DRTx filed its responsive brief in support of its special right of access to the information under its P&A authority on June 12, 2020.

12.     On or about July 23, 2020, the Attorney General issued its ruling, OR 2020-18441, herein attached as Exhibit A, which wrongfully denied DRTx access to all of the records that DRTx requested and Defendant sought to withhold other than the incident description that Defendant had not sought to withhold.

13.     Even though the P&A Acts and implementing regulations specifically list these types of documents as "records," the Attorney General confusingly declined to find the documents as the type of "records" contemplated by the P&A Acts and withheld the documents stating that "we are unwilling to assume that Congress meant more than it said in enacting the PAIMI and the [PADD] Act," and concluded that the information specifically described in sections 10806(b)(3)(A) and 15043(c) is the only type of information to which Congress intended to grant a P&A access.

14.     Because the Attorney General did not find that DRTx has a special right of access that preempts state law, it went on to incorrectly determine the information submitted by Defendant

was information "that deals with the detection, investigation, or prosecution of crime" and that "release of the information would interfere with the detection, investigation, or prosecution of crime".

15.     On August 3, 2020, Defendant provided a redacted version of an Incident Report narrative and Supplemental Report narrative, six pages herein attached as Exhibit B.

16.     Over four months after the initial request, DRTx has been unable to obtain a copy of case notes, investigative reports, jail or medical records, or video of the incident. Defendant's failure to release these records violates DRTx's special right of access under the Texas Public Information Act.  It also unduly limits, impairs and impedes DRTx's ability to complete its statutorily authorized investigation into the incident of potential abuse or neglect of A.W. when she was detained and placed in its custody, during which time she died by suicide.

## V.   CAUSES OF ACTION - SUIT FOR WRIT OF MANDAMUS

17.     DRTx brings this lawsuit under the authority of section 552.321 of the Texas Government Code to compel Defendant to disclose the information and records requested by DRTx. DRTx, as the protection and advocacy agency for the State of Texas, has a special right of access to the requested confidential information under Texas Government Code § 552.023. DRTx restates and incorporates herein by reference each of the allegations contained herein.

18.     The PADD and PAIMI Acts authorize Plaintiff DRTx to conduct abuse and neglect investigations and to otherwise perform its statutory mandate to protect individuals with disabilities from abuse and neglect.

19.     In order to perform its advocacy and investigatory role, the PADD and PAIMI Acts provide DRTx with the authority to investigate incidents of abuse and neglect of individuals with disabilities when such incidents are reported to the system or there is probable cause to believe that the incidents occurred. 42 U.S.C. § 15043(a)(2)(A) and (B); 42 U.S.C. § 10805(a)(1)(A) and

(B); 29 U.S.C. § 794e(f)(2). In tandem with this charge, Congress granted the P&As broad and unique legal authority to secure records. The P&A Acts provide that the P&A systems "shall…have access to all records of any individual with a mental illness" and specifically defines the facilities covered by the PAIMI Act include but are not limited to "**jails** and prisons, including all general areas as well as special mental health or forensic units." 42 U.S.C. § 10805(a)(4)(C), 42 C.F.R. § 51.2.

20.     This right of access applies to records of individuals with disabilities "prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records ." 42 U.S.C. § 10806(b)(3)(A); *see also* 42 C.F.R. § 51.42.

21.     The federal statutes that create these rights explicitly require that they supersede any state law or policy prohibiting such access. 42 U.S.C. § 10806 (b)(2)(C).

22.     The information requested by DRTx is the exact type of information identified in the P&A Acts and regulations as records, and therefore must be disclosed to DRTx. Without these records, DRTx will be unable to complete a thorough investigation into the possible abuse or neglect of A.W.

23.     Because the federal P&A Acts preempt any state law that may otherwise prohibit the release of the information, state law may not inhibit DRTx's access to the records.

24.     Even if the P&A Acts did not preempt state law, which it does, the state laws relied upon by the Attorney General to prohibit release of the records are not applicable in this situation. The Attorney General incorrectly accepted Kirby Police Department's argument that the confidential information exception in Texas Government Code § 552.101 and the criminal law

detection, investigation, or prosecution exception in Texas Government Code § 552.108(a)(1) apply.

25.     Where DRTx is required to keep confidential any information that it obtains, and that information is not subject to disclosure, 42 C.F.R. § 51.45(a), is not the same as releasing the information to the public.  Nor is there any evidence that releasing the information to DRTx will hinder detection, investigation, or prosecution of a crime since A.W. is deceased.

26.     Defendant's refusal to give DRTx access to the requested records and policies violates its special right of access under the PADD and PAIMI Acts to timely access to the records of persons whom DRTx has probable cause to believe have been abused or neglected, preventing DRTx from investigating the abuse of individuals with disabilities.

27.     Therefore, DRTx seeks a writ of mandamus directing the Kirby PD to make information and records requested by DRTx available for inspection and/or duplication.

### VI.  PRAYER FOR RELIEF

28.     THEREFORE, DRTx respectfully requests that the parties take notice of the filing of this suit and prays that this Court, upon final hearing:

(1)     Issue a writ of mandamus requiring Defendant to produce to DRTx the unredacted incident report, entire jail record, including all grievances and investigations, any and all video footage of her in the holding cell and during booking;  the entire jail medical record; and physical death reports and certifications;

(2)     Enter judgment against Defendant and award DRTx expenses and court costs; and

(3)     Grant any and all relief, in law or equity, general or specific, to which DRTx may be justly entitled in this action.

Respectfully submitted,

COTY MEIBEYER
State Bar No. 24085469
cmeibeyer@drtx.org
DISABILITY RIGHTS TEXAS
1500 McGowen St., Suite 100
Houston, Texas 77004
(713) 974-7691 (Houston Office)
(713) 974-7695 (Houston Fax)

BETH L. MITCHELL
State Bar No. 00784613
bmitchell@drtx.org
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Austin Office)
(512) 454-3999 (Austin Fax)

**ATTORNEYS FOR PLAINTIFF**



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS



July 23, 2020

Mr. Marc J. Schnall
Counsel for City of Kirby
Langley & Banack
745 East Mulberry Street, Suite 900
San Antonio, Texas 78212-3166

OR2020-18441

Dear Mr. Schnall:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 835871.

The Kirby Police Department (the "department"), which you represent, received a request for specified policies and information pertaining to the death of a named individual. You state you will release some information upon payment of costs. You claim some of the submitted information is excepted from disclosure under sections 552.101, 552.108, and 553.130 of the Government Code.[1] We have considered the exceptions you claim and reviewed the submitted representative sample of information.[2] We have also received and considered comments from a representative for the requestor. *See* Gov't Code § 552.304 (interested party may submit comments stating why information should or should not be released).

Initially, we note the requestor has specifically excluded from her request for information public citizens' dates of birth and driver's license information. Thus, this type of information is not responsive to the present request for information. This ruling does not address the public availability of any information that is not responsive to the request and

---

[1] Although the department does not raise section 552.130 of the Government Code in its brief, we understand the department to raise this exception based on its markings.

[2] We assume the "representative sample" of records submitted to this office is truly representative of the requested records as a whole. *See* Open Records Decision Nos. 499 (1988), 497 (1988). This open records letter does not reach, and therefore does not authorize the withholding of, any other requested records to the extent those records contain substantially different types of information than that submitted to this office.

EXHIBIT A

Mr. Marc J. Schnall - Page 2

the department is not required to release such information in response to the present request.[3]

Next, we address the assertion from the requestor's representative that the department failed to comply with section 552.301 of the Government Code in requesting a ruling from this office. Section 552.301 of the Government Code prescribes the procedures a governmental body must follow in asking this office to decide whether requested information is excepted from public disclosure. *See id.* § 552.301. Pursuant to section 552.301(b), a governmental body must ask for a decision from this office and state the exceptions that apply within ten business days of receiving the written request. *See id.* § 552.301(b). Further, pursuant to section 552.301(e), a governmental body is required to submit to this office within fifteen business days of receiving an open records request (1) written comments stating the reasons why the stated exceptions apply that would allow the information to be withheld, (2) a copy of the written request for information, (3) a signed statement or sufficient evidence showing the date the governmental body received the written request, and (4) a copy of the specific information requested or representative samples, labeled to indicate which exceptions apply to which parts of the documents. *See id.* § 552.301(e). The department received the request for information on April 8, 2020. The department informs us it was closed for business on April 8, 2020, through April 30, 2020. We note this office does not count the date the request was received or holidays for the purpose of calculating a governmental body's deadlines under the Act. Thus, the department's ten-business-day deadline under section 552.301(b) was May 15, 2020, and the department's fifteen-business-day deadline under section 552.301(e) was May 22, 2020. The envelope in which the department provided the information required by sections 552.301(b) and 552.301(e) was postmarked May 11, 2020. *See id.* § 552.308(a)(1) (describing rules for calculating submission dates of documents sent via first class United States mail, common or contract carrier, or interagency mail). Thus, we conclude the department's correspondence to this office was timely submitted. Accordingly, we find the department complied with the procedural requirements mandated by section 552.301 of the Government Code. Therefore, we will address the department's argument against disclosure of the responsive information.

We also note the requestor is a representative of Disability Rights Texas ("DRT"), which has been designated as the state's protection and advocacy system ("P&A system") for purposes of the federal Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10851, the Developmental Disabilities Assistance and Bill of Rights Act ("DDA Act"), 42 U.S.C. §§ 15041-15045, and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e. *See* Tex. Gov. Exec. Order No. DB-33, 2 Tex. Reg. 3713 (1977); Attorney General Opinion JC-0461 (2002); *see also* 42 C.F.R. §§ 51.2 (defining "designated official" and requiring official to designate agency to be accountable for funds of P&A agency), .22 (requiring P&A agency to have a governing authority responsible for control).

The PAIMI Act provides, in relevant part, that DRT, as the state's P&A system, shall have the authority to "investigate incidents of abuse and neglect of individuals with mental

---

[3] As we are able to make this determination, we need not address your arguments against disclosure of this information.

EXHIBIT A

Mr. Marc J. Schnall - Page 3

illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[.]" 42 U.S.C. § 10805(a)(1)(A). Further, the PAIMI Act provides DRT shall

> (4) . . . have access to all records of—
>
> > . . .
> >
> > > (B) any individual (including an individual who has died or whose whereabouts are unknown)—
> > >
> > > > (i) who by reason of the mental or physical condition of such individual is unable to authorize the [P&A system] to have such access;
> > > >
> > > > (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
> > > >
> > > > (iii) with respect to whom a complaint has been received by the [P&A system] or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect[.]

*Id.* § 10805(a)(4)(B)(i)-(iii). The term "records" as used in the above-quoted provision includes reports prepared by any staff of a facility rendering care and treatment [to the individual] or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records. *Id.* § 10806(b)(3)(A); *see also* 42 C.F.R. § 51.41(c) (addressing P&A system's access to records under PAIMI). Further, the PAIMI Act defines the term "facilities" and states the term "may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons." 42 U.S.C. § 10802(3). The DDA Act provides, in relevant part, that a P&A system shall

> (B) have the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred;
>
> . . .
>
> (I) have access to all records of—
>
> > . . .

**EXHIBIT A**

(ii) any individual with a developmental disability, in a situation in which—

(I) the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;

(II) the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and

(III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect[.]

*Id.* § 15043(a)(2)(B), (I)(ii). The DDA Act states the term "record" includes

(1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities;

(2) a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents; and

(3) a discharge planning record.

*Id.* § 15043(c). The PAIR Act provides, in relevant part, that a P&A system will "have the same . . . access to records and program income, as are set forth in [the DDA Act]." 29 U.S.C. § 794e(f)(2).

DRT states the individual named in the request is a person with a mental illness who did not receive adequate treatment in the department's jail. DRT explains it intends to investigate the incident regarding possible abuse or neglect of an individual with a mental illness as defined by federal law. *See* 42 U.S.C. § 10802(4) (defining term "individual with mental illness"). DRT has established the individual at issue does not have a legal guardian, conservator, or other legal representative acting on his behalf for purposes of PAIMI and the DDA Act with regard to the investigation of possible abuse and neglect. We note Attorney General Opinion JC-0461 concluded, based on the plain language of federal statutes and regulations, the underlying purpose of the PAIMI and the DDA Act, and court interpretations of these laws, a P&A system may have access to individuals with mental illness or developmental disabilities and their records irrespective of guardian consent. Attorney General Opinion JC-0461 (2002). Additionally, DRT indicates it has probable

**EXHIBIT A**

Mr. Marc J. Schnall - Page 5

cause to believe the individual's injuries may have been the result of abuse and neglect. *See* 42 C.F.R. § 51.2 (stating that the probable cause decision under PAIMI may be based on reasonable inference drawn from one's experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect).

A state statute is preempted by federal law to the extent it conflicts with that federal law. *See, e.g., Equal Employment Opportunity Comm'n v. City of Orange*, 905 F. Supp. 381, 382 (E.D. Tex. 1995). Further, federal regulations provide that state law must not diminish the required authority of a P&A system. *See* 45 C.F.R. § 1386.21(f); *see also Iowa Prot. & Advocacy Servs., Inc. v. Gerard*, 21A F. Supp. 2d 1063 (N.D. Iowa 2003) (broad right of access under section 15043 of title 42 of the United States Code applies despite existence of any state or local laws or regulations which attempt to restrict access; although state law may expand authority of P&A system, state law cannot diminish authority set forth in federal statutes); *Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen*, 206 F.R.D. 630, 639 (S.D. Iowa 2001); *cf.* 42 U.S.C. § 10806(b)(2)(C). Similarly, Texas law states, "[n]otwithstanding other state law, [a P&A system] . . . is entitled to access to records relating to persons with mental illness to the extent authorized by federal law." Health & Safety Code § 615.002(a). Thus, the PAIMI and the DDA Act grant DRT access to "records," and, to the extent state law provides for the confidentiality of "records" requested by DRT, its federal rights of access under the PAIMI and the DDA Act preempt state law. *See* 42 C.F.R. § 51.41(c); *see also Equal Employment Opportunity Comm'n*, 905 F. Supp. at 382. Accordingly, we must address whether the information at issue constitutes "records" of an individual with a mental illness as defined by the PAIMI or a disability as defined by the DDA Act.

Although the definition of "records" is not limited to the information specifically described in sections 10806(b)(3)(A) and 15043(c) of title 42 of the United States Code, we do not believe Congress intended for the definitions to be so expansive as to grant a P&A system access to any information it deems necessary.[4] Such a reading of the statute would render sections 10806(b)(3)(A) and 15043(c) insignificant. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (statute should be construed in a way that no clause, sentence, or word shall be superfluous, void, or insignificant). Furthermore, in light of Congress's evident preference for limiting the scope of access, we are unwilling to assume that Congress meant more than it said in enacting the PAIMI and the DDA Act. *See Kofa v. INS*, 60 F.3d 1084 (4th Cir. 1995) (stating that statutory construction must begin with language of statute; to do otherwise would assume that Congress does not express its intent in words of statutes, but only by way of legislative history), *see generally Coast Alliance v. Babbitt*, 6 F. Supp. 2d 29 (D.D.C. 1998) (stating that if, in following Congress's plain language in statute, agency cannot carry out Congress's intent, remedy is not to distort or ignore Congress's words, but rather to ask Congress to address problem). Based on this analysis, we believe the information specifically described in sections 10806(b)(3)(A) and 15043(c) is indicative of the types of information to which Congress intended to grant a P&A system access. *See*

---

[4] Use of the term "includes" in section 10806(b)(3)(A) of title 42 of the United States Code indicates the definition of "records" is not limited to the information specifically listed in that section. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202 (5th Cir. 1996); *see also* 42 C.F.R. § 51.41.

EXHIBIT A

Mr. Marc J. Schnall - Page 6

*Penn. Prot. & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 426 n.1 (3rd Cir. 2000) ("[I]t is clear that the definition of 'records' in § 10806 controls the types of records to which [the P&A system] 'shall have access' under § 10805[.]").

Upon review, we note the responsive information is related to criminal law enforcement and is being used for law enforcement purposes. Thus, we conclude DRT has failed to demonstrate the applicability of section 10806 of title 42 of the United States Code or section 15043 of title 42 of the United States Code to this information. Accordingly, DRT does not have a right of access to this information, and we will address the department's claimed exception for the responsive information at issue.

Section 552.108(a)(1) of the Government Code excepts from disclosure "[i]nformation held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime . . . if . . . release of the information would interfere with the detection, investigation, or prosecution of crime[.]" Gov't Code § 552.108(a)(1). A governmental body claiming section 552.108(a)(1) must explain how and why the release of the requested information would interfere with law enforcement. *See id.* §§ 552.108(a)(1), .301(e)(1)(A); *see also Ex parte Pruitt*, 551 S.W.2d 706 (Tex. 1977). The department states the responsive information it marked pertains to an active criminal investigation or prosecution. Based on this representation, we conclude the release of the information at issue would interfere with the detection, investigation, or prosecution of crime. *See Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975) (court delineates law enforcement interests that are present in active cases), *writ ref'd n.r.e. per curiam*, 536 S.W.2d 559 (Tex. 1976). Thus, the department may withhold the responsive information you marked under section 552.108(a)(1) of the Government Code. The department must release the remaining responsive information.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Meagan Hunter
Assistant Attorney General
Open Records Division

MH/mo

**EXHIBIT A**

Mr. Marc J. Schnall - Page 7

Ref:    ID# 835871

Enc.    Submitted documents

c:      Requestor
        (w/o enclosures)

EXHIBIT A

EXHIBIT A



# L A N G L E Y & B A N A C K
INCORPORATED

Attorneys and Counselors at Law

MARC J. SCHNALL
Board Certified – Commercial Real Estate Law
Board Certified – Residential Real Estate Law
Texas Board of Legal Specialization



RECEIVED
AUG 10 2020
BY: DRTX

August 3, 2020

Ms. Stephanie Saenz
Disability Rights Texas
1500 McGowen St., Suite 100
Houston, TX 77004

      Re:  Public Information Request to City of Kirby

Dear Ms. Saenz:

     By Open Records Letter Number OR2020-18441 dated July 23, 2020, the Office of the Attorney General of Texas has responded to the City of Kirby's request for a determination as to the release of certain of the information you sought by your public information request received by the City of Kirby.

     In accordance with Open Records Letter Number OR2020-18441, enclosed is a copy of the information you requested but with certain information withheld or redacted.

               Sincerely,

               Marc J. Schnall
               City Attorney, City of Kirby

MJS.ab
Enclosures as stated

TRINITY PLAZA II • 745 EAST MULBERRY, STE 700
SAN ANTONIO, TEXAS 78212 • T 210.736.6600 • F 210.735.6889
WWW.LANGLEYBANACK.COM

SAN ANTONIO • CARRIZO SPRINGS • EAGLE PASS • KARNES CITY • CASTROVILLE • NEW BRAUNFELS

L & B 07315/0003/L1818061.DOCX/     MERITAS® LAW FIRMS WORLDWIDE

EXHIBIT B

## KIRBY POLICE DEPARTMENT

4130 Ackerman Road
Kirby, TX 78219

(210) 661-8515

Case #:  K20-020268

Report Type:  Incident Report
Status:  Open
Reason:
Report Date:  2/21/2020
Title:  In-Custody Death

**1**

Page 1 of 4

---

CASE #:   K20-020268
Incident Date/Time:    2/21/2020 8:36:07 AM
Location:

☐ Cargo Theft

| Suspect Name | DOB | DL/ID# |
|---|---|---|
| AMANDA L. WATKINS | 08/31/1983 | TX - 22852065 |

INVESTIGATING OFFICER:
Alonzo, Michael  ID-NR: 3411

SIGNATURE:

REGION/DISTRICT/SGT. AREA:        Texas

APPROVING SUPERVISOR:
ID-NR:

SIGNATURE:

---

### SUSPECT

Name:            WATKINS, AMANDA LYNN
Address:         5422 BOATMAN
City, State, Zip:  SAN ANTONIO, TX 78219
County:          -- --

Arrested:        ☐
UCR Offense:

| | | | |
|---|---|---|---|
| DOB: | 08/31/1983 | DL Number: | 22852065 TX |
| Age: | 36 | ID Card Number: | -- -- |
| Race/Gender: | Unknown / Female | SSN: | -- -- |
| Ethnicity: | -- -- | Home Phone: | -- -- |
| Height/Weight: | 5' 00" / 170 lbs. | Cell Phone: | -- -- |
| Build: | -- -- | Occupation: | -- -- |
| Hair/Eyes: | Brown / Brown | Employer: | -- -- |
| Complexion: | -- -- | Work Phone: | -- -- |
| Alias: | -- -- | | |
| Scars: | -- -- | | |
| Marks: | -- -- | | |
| Tattoos: | -- -- | | |
| Disabilities: | -- -- | | |

**EXHIBIT B**

# KIRBY POLICE DEPARTMENT

4130 Ackerman Road
Kirby, TX 78219

(210) 661-8515

Case #:  **K20-020268**

**2**

Report Type:  **Incident Report**
Status:  **Open**
Report Date:  **2/21/2020**
Title:  **In-Custody Death**

Page 2 of 4

## EVIDENCE INFORMATION:

### EVIDENCE      # 1

| | |
|---|---|
| Description: | **ligature** |
| Location Collected: | **ME Office** |
| Inventory Number: | **E-1** |
| Collecting Officer: | **Alonzo, Michael** |
| Subjects Associated: | **WATKINS, AMANDA** |

Date Collected:      **2/28/2020**

### EVIDENCE      # 2

| | |
|---|---|
| Description: | **clorting** |
| Location Collected: | **ME Office** |
| Inventory Number: | **E-2** |
| Collecting Officer: | **Alonzo, Michael** |
| Subjects Associated: | **WATKINS, AMANDA** |

Date Collected:      **2/28/2020**

### VIDEO EVIDENCE

Evidence Collected:      [X] Yes      [ ] No
Evidence Type:      **SELECT**

EXHIBIT B

| **KIRBY POLICE DEPARTMENT** | Case #:  K20-020268 | **3** |
|---|---|---|
| 4130 Ackerman Road | Report Type:  Incident Report | Page 3 of 4 |
| Kirby, TX 78219 | Status:  Open | |
| (210) 661-8515 | Report Date:  2/21/2020 | |
| | Title:  In-Custody Death | |

**NARRATIVE:**

On 02-20-2020 I, Sgt Michael Alonzo assisted with a call for service at 5422 Boatman. Dispatch advised that the caller stated that her girlfriend was attempting to break into the house. Upon arrival I observed two females standing outside the residence. I then motioned to one of the females to talk to me and she complied. The female was irate and kept saying that she (referring to the other female) was cheating on her and with a guy and that she found the condom. I then tried multiple times to find out what occurred and she would just state that she was mad about the female whom she is married to cheated on her and struck her with her cell phone causing an injury to her forehead. Due to the nature of the call the female was terry frisked and a folding knife was found on her person and was held for safety reasons. During this time, I asked for her ID and she presented a DL which identified her as Amanda Watkins. I then asked again what occurred and Watkins stated that she had left yesterday because she was mad and returned home to get some belongings and that her wife (identified as Vanessa, Pena) threw her cell phone at her striking her in the face causing a large contusion. Watkins denied striking her but did admit to breaking a window to the residence. I was then notified by Lt. Roxanne Cardona that Watkins was in possession of a axe when she came to the residence and threatened Pena with it. Based on the information Watkins was placed in custody and charged with Aggravated Assault with a deadly weapon. During this time Watkins stated that she needed to go the hospital for the injury that she received to her head. EMS was contacted and arrived on scene. I then took photographs of the damage that Watkins is alleged to have committed the night before inside the residence. I then departed the location and returned to the Kirby Police Department. Watkins was transported to the Kirby Police Department and then taken to Northeast Baptist for treatment. Upon arrival Watkins was released from custody and then re-arrested by Officer Vasquez when she signed out against medical advice and transported back to the Kirby Police Department and eventually placed in holding cell two.

While in my office I heard Lt. Cardona yell for EMS. I then headed over to the holding cell and observed Lt. Cardona performing CPR (chest compressions only) on Watkins. Officer Scott Carlson was also present in the cell. I then yelled for assistance in getting Watkins out of the cell for more room and Officer Megan Thompson and Detective Jason Rendon grabbed Watkins by the feet and pulled her into the hallway outside the holding cell.

I then began chest compression on Watkins and during this time I observed that Watkins's fingers and lips were blue and she appeared to be dead. I then checked for a carotid pulse and detected no pulse so I continued chest compression until I was replaced by Lt. Cardona. EMS soon arrived and took over life saving measures on Watkins. EMS then began resuscitation efforts on Watkins but she was pronounced dead by EMS at approximately 1153 hours.

**EXHIBIT B**

| **KIRBY POLICE DEPARTMENT** | Case #: K20-020268 | **1** |
|---|---|---|
| 4130 Ackerman Road | Report Type: **Supplement Report** | |
| Kirby, TX 78219 | Status: **Open** | Page 1 of 3 |
| | Reason: **Not Applicable** | |
| (210) 661-8515 | Report Date: **3/31/2020** | |
| | Title: **In-Custody Death** | |

CASE #:  K20-020268
Incident Date/Time:    3/31/2020 7:43:21 AM
Location:

☐ Cargo Theft

INVESTIGATING OFFICER:
   Cardona, Roxanne  ID-NR: 3723

SIGNATURE:

| Suspect Name | DOB | DL/ID# |
|---|---|---|
| AMANDA L. WATKINS | 08/31/1983 | TX - 22852065 |

REGION/DISTRICT/SGT. AREA:       Texas

APPROVING SUPERVISOR:
ID-NR:

SIGNATURE:

### SUSPECT

Name:          WATKINS, AMANDA LYNN
Address:       5422 BOATMAN
City, State, Zip:   SAN A NTONIO, TX 78219
County:        -- --

Arrested:      ☐
UCR Offense:

| | | | |
|---|---|---|---|
| DOB: | 08/31/1983 | DL Number: | 22852065 TX |
| Age: | 36 | ID Card Number: | -- -- |
| Race/Gender: | White / Female | SSN: | -- -- |
| Ethnicity: | Hispanic | Home Phone: | -- -- |
| Height/Weight: | 5' 00" / 170 lbs. | Cell Phone: | -- -- |
| Build: | -- -- | Occupation: | -- -- |
| Hair/Eyes: | Brown / Brown | Employer: | -- -- |
| Complexion: | -- -- | Work Phone: | -- -- |
| Alias: | -- -- | | |
| Scars: | -- -- | | |
| Marks: | -- -- | | |
| Tattoos: | -- -- | | |
| Disabilities: | -- -- | | |

**EVIDENCE INFORMATION:**
**VIDEO EVIDENCE**

Evidence Collected:      [X] Yes      ☐ No
Evidence Type:

# EXHIBIT B

| **KIRBY POLICE DEPARTMENT** | Case #:  K20-020268 | **3** |
|---|---|---|
| 4130 Ackerman Road | Report Type:  Supplement Report | Page 3 of 3 |
| Kirby, TX 78219 | Status:  Open | |
| (210) 661-8515 | Report Date:  3/31/2020 | |
| | Title:  In-Custody Death | |

I asked Officer Vasquez to go back to the Kirby Police Department. I gathered my items out of his patrol vehicle and before Officer Vasquez left to go to the hospital, he informed me that Amanda was not feeling well. I turned my body camera on and went to speak with her. Officer Vasquez stated Amanda was feeling lethargic. I took the time to make sure she was receiving A/C from the patrol vehicle to her position in the back seat of the patrol car, which in fact she was. Amanda stated her head hurt a lot. Because of her moods being oddly high and low, I asked her if she had ever been diagnosed with any medical or mental condition and she stated, "No". She explained, "I don't drink or do drugs". I asked her if she has ever been this angry in the past and she stated, "Yea". I asked her if she had any sleep and she stated that she had in fact slept well. She stated her anger had nothing to with what she was currently feeling. I told Officer Vasquez if EMS had to transport her to be safe that was okay. If in fact she had to be transported to the hospital and left there, I informed Amanda that the charges will be filed at large regardless in which she did understand. I told Vasquez to follow EMS to the hospital to make a determination there as to the severity of her condition.

I went back inside to complete my documentation of the incident. At some point I overheard Officer Vasquez leave the hospital through the handheld radio. A short time later I overheard dispatch inform Officer Vasquez that Amanda was walking out of the hospital. Officer Vasquez told dispatch to arrest her due to what occurred today. I intervened and informed Officer Vasquez that we had exigent circumstance to arrest her due to what occurred today. Due to the short amount of time Amanda spent at the hospital, I knew she more than likely refused any medical treatment and walked out. My concern at that point was that Amanda would go back to her home and physically harm or kill her spouse, Vanessa. Amanda had already showed up to the house the night prior to damage the home and use as a sharp instrument to damage Vanessa's tires.  Amanda's statement to me that she did bring the axe into the home to basically threaten her wife was also alarming. So I told Officer Vasquez to go back and arrest her and bring her back to the police department. Once Officer Vasquez picked her up he came back to the police department and requested assistance while in the Sally Port. Sgt. Scurlock and myself waited for Officer Vasquez to pull into the gateway and sally port. Once arrived, I opened the door and Amanda was in the back seat with her hands in her lap. She asked me why she was here and I told her she was under arrest. She asked me why, I told her again it was for Aggravated Assault with a Deadly Weapon. I asked her to step out and that I needed to search and pat her down again. Amanda's demeanor when she came back was calm. She was not argumentative or belligerent. She complied with all my commands while searching her again. I had her take her additional jacket off and her shoes with laces. She did not have a belt or anything on her person that would cause her harm. I placed her in what the Kirby Police Department would call the "female holding facility" while she awaited transported to the Bexar County Jail. I did place my body cam on the door since at the time the cameras were not functional. Amanda was seen sitting down on the concrete bench and she did mention wanting to pursue charges against her wife for throwing the phone. I explained to her I would be diligent in making sure to document all facts on my report. She seemed to have found comfort when it told her that and I closed the holding cell door.

I began to assist in gathering all documentation needed for booking in Bexar County Jail. Officer Carlson was instructed by Sgt. Scurlock to assist in filling out the Bexar County Booking paperwork. I went back to my office to complete a written report of the incident involving Amanda's charge which is required by BCSO Jail. At some point I heard calls being dispatched. I was not sure if anyone had conducted a cell check so I got out of my office and grabbed Officer Carlson to assist me. I informed Dispatch I was going to do a cell check. Before I opened the cell door, I opened the hatch to make sure Amanda was visible. I observed Amanda's feet on the ground. I figure she might have fallen asleep on the ground and so I opened the door. When I opened the door, Amanda in fact had utilized her wind breaker pants and wrapped them around her neck. The pants were attached to the handicap bar near the toilet. I observed her to be unresponsive against the wall. I immediately called for EMS. She was blue in the face and I attempted to remove the pants away from her neck.  Once the pants were removed, I began chest compressions. I then asked Officer Carlson to assist me in the chest compressions. Once other officers came to assist, I escorted myself from the scene and informed Sgt. Alonzo to contact the Rangers.

EXHIBIT B